```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF MINNESOTA
                    08-CV-5495(JMR/RLE)
```

Minch Family LLLP             )
                              )
    v.                       )        ORDER
                              )
Estate of Gladys I. Norby     )
and Robert N. Norby,          )
individually and as Personal  )
Representative of the Estate  )
of Gladys I. Norby            )

This matter is before the Court on the parties' cross-motions for summary judgment. Defendants' motion is granted; plaintiff's motion is denied.

I. <u>Background</u>

The facts are taken in the light most favorable to plaintiff.

For many years, the Minch and Norby families have owned adjoining farmland near the Buffalo River in western Minnesota. Both properties lie within the jurisdiction of the Buffalo-Red River Watershed District ("BRRWD"). Since 2000, during heavy rain, flooding occurs on a portion of the Minch property. The Minch family claims the flooding is caused by an L-shaped field dike built and maintained by the Norbys; the Norbys claim the flooding is caused by the Minch family's failure to clean a drainage ditch system on the Minch property.

After an autumn 2000 flood, the Minch family vented its

concerns before the BRRWD.[1] The Minch family did not petition the BRRWD under statutes governing watershed districts and drainage authorities. Instead, A.R. Minch and his son Roger repeatedly raised their concerns about the Norby dike at BRRWD public meetings.[2] In 2004, flooding caused the Minch family crop and dollar losses. (Affidavit of Roger Minch in Support of Motion for Summary Judgment, ¶¶ 11-12.)

On September 7, 2007, the BRRWD sent the Minch family a letter saying it would not address their concerns. Over a year later, on October 14, 2008, the Minch family, acting through a limited liability limited partnership, commenced this action in federal court. All Minch Family LLLP partners reside outside of the state of Minnesota. Robert Norby is a Minnesota resident. As the parties are diverse, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

The Amended Complaint ("Complaint") claims the Norbys wrongfully altered a natural drainage way; violated the reasonable use doctrine; and are liable for trespass, nuisance, strict

---

[1] BRRWD meeting minutes for November 27, 2000, reflect A.R. Minch "advis[ing] that a dike built by Robert Norby, and plugged culverts through the BNSF railroad tracks, were probably the primary cause for the lack of drainage." (Pl. Mem. Opp. at 5, citing Affidavit of Zenas Baer, Ex. 13(c) [Doc. 66].)

[2] Plaintiff points out that following Roger Minch's August 27, 2001, BRRWD complaint the district approved a motion to notify Norby by letter that his field dike violated BRRWD rules. (Pl. Mem. Opp. at 4.)

liability, and deliberate disregard of plaintiff's rights. All claims arise from the periodic flooding allegedly caused by the Norby field dike.

Defendants move for summary judgment, arguing this lawsuit is barred by the applicable statute of limitations.

II. Analysis

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Anderson, 477 U.S. at 248-49.

Defendants claim this action is time-barred. A defendant who seeks to apply the statute bears the burden of showing the plaintiff's claims are time-barred. Nolan & Nolan v. City of Eagan, 673 N.W.2d 487, 495 (Minn. Ct. App. 2003).

The parties agree Minnesota law governs, but are at odds over which statute of limitations applies. Defendants offer the two-year defective improvements to real property limitations period, see Minn. Stat. § 541.051 (2008), or alternatively, the six-year nuisance and trespass period. Minn. Stat. § 541.05 (2008).

Plaintiff relies on the far-longer 15-year period for adverse possession. Minn. Stat. § 541.02 (2008).

Taking the statutes in reverse order, the Court finds the 15-year statute inapplicable. Plaintiff does not seek ejectment[3] or adverse possession.[4] Further, defendants' affirmative defense of adverse possession (Ans. ¶¶ 47-48) does not extend plaintiff's time in which to file its Complaint. As plaintiff's Complaint alleges no facts supporting an action governed by Minn. Stat. § 541.02, that statute does not apply.

The other two statutes - Sections 541.05 and 541.051 - are both potentially applicable. Minn. Stat. § 541.05 provides, in

---

[3] An action in ejectment "can be maintained only against a person in possession by one having a present exclusive right to possession." Levine v. Twin City Red Barn No. 2, Inc., 207 N.W.2d 739, 741 (Minn. 1973). Here, nobody alleges the Norbys actually possess any part of the Minch farm. If plaintiff argues the episodic flooding is a "continuous taking" (Compl. ¶ XL), it has offered no evidence of that fact, or any settled law showing individual instances of intermittent flooding can be equated to continuous possession. See Nolan & Nolan v. City of Eagan, 673 N.W.2d 487, 492 (Minn. Ct. App. 2003). Plaintiff argues the Minch family "was 'seized' of its possession and use of portions of the Minch property as a result of the flooding caused by the Norby field dikes." (Pl. Mem. Opp. at 31.) As 'seize' means to place in possession, see Black's Law Dictionary (8th ed.) at 1389, plaintiff's argument fails to allege adverse possession.

[4] An action in adverse possession -- which operates to divest, not to restore, title -- would require proof that the property "has been used in an actual, open, continuous, exclusive, and hostile manner for 15 years." Hebert v. City of Fifty Lakes, 744 N.W.2d 226, 230 n.3 (Minn. 2008). Here, it is undisputed plaintiff has legal title to the Minch property, and it does not seek to divest defendants of title to the Norby property. Adverse possession does not apply.

4

relevant part:

> [T]he following actions shall be commenced within six years:
> (1) upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed;
> (2) upon a liability created by statute . . . ;
> (3) for a trespass upon real estate . . . .

Minn. Stat. § 541.05 (2008).

The Complaint alleges trespass, which is explicitly covered, and nuisance, a "liability created by statute." See Compl. ¶¶ XXXVIII, XXIX, XXX; Minn. Stat. § 561.01 (2008). Plaintiff also argues its claim of violation of the reasonable use doctrine qualifies as an "other obligation, express or implied, as to which no other limitation is expressly prescribed." (Pl. Mem. Opp. at 32-33.) Under any of these legal theories, the Complaint falls within a plain reading of § 541.05, and its six-year limitations period.

However, the periodic flooding is allegedly caused by the Norby field dike. If the dike is considered an improvement to real property, a different statute applies. That statute provides, in relevant part:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, shall be brought . . . more than two years after discovery of the injury.

Minn. Stat. § 541.051 subd. 1(a) (2008).

The Minnesota Supreme Court has adopted a "common-sense

5

interpretation" of the phrase "improvement to real property." Such an "improvement" is defined as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." State Farm Fire and Cas. v. Aquila Inc., 718 N.W.2d 879, 884 (Minn. 2006).

The parties dispute whether the Norby dike is an improvement to real property. Defendants point to courts which have found similar structures to be improvements. See Capitol Supply Co. v. City of St. Paul, 316 N.W.2d 554, 554 (Minn. 1982) (per curiam) (storm sewer); Nelson v. Short-Elliot-Hendrickson, Inc., 716 N.W.2d 394, 401 (Minn. Ct. App. 2006) (sedimentation pond); Nolan & Nolan v. City of Eagan, 673 N.W.2d 487, 496 (Minn. Ct. App. 2003) (storm sewer); Matter v. Nelson, 478 N.W.2d 211, 213 (Minn. Ct. App. 1991) (drainage swale).

The Court agrees with defendants. Applying Minnesota's common-sense test, this Court finds the dike and associated structures "permanent," their construction "involved the expenditure of labor or money," and they were constructed with an obvious intent to make the Norby property more useful and enhance its value. Plaintiff suggests the dike is not permanent because it has occasionally washed out. (Pl. Mem. Supp. S.J. at 7.) Such a

pinched definition would eventually exclude almost any structure.[5]
The dike is manifestly not an "ordinary repair."

Plaintiff argues the dike is not an improvement to real property because the Norby family has not surrendered control over it, relying on Johnson v. Steele-Waseca Coop. Elec., 469 N.W.2d 517, 520 (Minn. Ct. App. 1991). (Pl. Mem. Opp. S. J. at 27-29.) However, as Johnson clearly indicates, an owner need not surrender control of a structure on his property for it to qualify as an improvement. See Johnson, id. at 519 (finding electrical equipment installed on barn to be improvement to plaintiff's real property). The dike is an improvement to real property.

The parties next dispute whether the dike is in a "defective and unsafe condition" within the statute's meaning. This question turns on the individual facts and circumstances of the case. Griebel v. Andersen Corp., 489 N.W.2d 521, 523 (Minn. 1992). "An improvement to real property is deemed defective and unsafe if it is incomplete, faulty, dangerous, and/or insecure." Nolan, 673 N.W.2d at 496. Risk to human health is not required. Griebel, 489 N.W.2d at 523. For example, the Minnesota Supreme Court found glass doors, which permitted flies to enter a home, were defective and unsafe. Id.

---

[5]After all, "in time the Rockies may crumble, Gibraltar may tumble, they're only made of clay." "Our Love Is Here To Stay," words and music by George & Ira Gershwin (1938). Plaintiff offers no legal authority to support this argument. The Court finds it unpersuasive.

7

Here, the dike allegedly caused periodic flooding. Courts have found structures that cause flooding are in a defective and unsafe condition. Nolan, 316 N.W.2d at 496, citing Capitol Supply Co., 316 N.W.2d at 554, and Ocel v. City of Eagan, 402 N.W.2d 531, 534 (Minn. 1987). The Court finds the flooding is caused by a "defective and unsafe condition" within the meaning of the statute.

Next, plaintiff claims the statute does not apply to actions seeking both dollar damages and injunctive relief.[6] Plaintiff is wrong. Granted, the statute's plain language calls out actions "to recover damages." § 541.051 subd. 1(a). However, the statute does not exclude actions for injunctive relief. Plaintiff offers no authority, and the Court finds none, suggesting the legislature intended to permit a plaintiff to evade the limitations period by artfully drafting its prayer for relief. Because plaintiff's reading would produce an unreasonable result and render the limitations statute both ineffective and uncertain, see Minn. Stat. §645.17 (2008), the Court rejects it.

Plaintiff argues this case falls under a statutory exception which preserves claims arising from "negligence in the maintenance, operation or inspection of the real property improvement." Minn. Stat. § 541.051 subd. 1(d). The Court disagrees. Plaintiff has

---

[6] Injunctive relief is available for nuisance and trespass claims. See Minn. Stat. § 561.01 (nuisance); Citizens for a Safe Grant v. Lone Oak Sportsmen's Club, 624 N.W.2d 796, 807 (Minn. Ct. App. 2001) (trespass).

8

the burden of proving the exception, see State Farm, 718 N.W.2d at 886, but offers no evidence showing it applies here. The Complaint never alleges the flooding is due to any particular negligent act of maintenance, repair, or inspection of the dike; it merely alleges that the dike has been built, exists, is maintained and repaired, and causes flooding. (Compl. ¶¶ XI, XII, XXXI, XXXVI). Plaintiff's claim is, ultimately, that the flooding is caused by Norby's dike obstructing a natural drainage way; nothing suggests this obstruction is caused by faulty dike maintenance.[7]

Plaintiff urges the Court to imply a negligent maintenance claim from its nuisance and reasonable-use-doctrine claims. The Court declines to do so. While it is true that "negligence may be the cause of a nuisance, it is not necessarily an element of a nuisance action." Highview North Apts. v. County of Ramsey, 323 N.W.2d 65, 71 (Minn. 1982). Similarly, the "reasonable use" doctrine "is not to be confused with 'reasonable care,' a negligence concept; 'reasonable use' refers rather to a reasonable regard for the rights of others so that harm may be prevented or minimized." Id. at 72. A violation of the reasonable use doctrine does not necessarily establish a breach of the duty of reasonable care required to show negligence. See Kral v. Boesch, 557 N.W.2d

---

[7] Plaintiff's memorandum in support of its motion for summary judgment identifies numerous repairs and modifications made by Norby. Plaintiff argues that "Norby made modifications/alterations and changes to the dike that did not result in any concerns until, at the earliest, the early 2000's." (Pl. Mem. Supp. S.J. at 7-8.)

9

597, 599 (Minn. Ct. App. 1996); Geary v. Miller, 2009 WL 1515505, *2-3 (Minn. Ct. App. June 2, 2009) (unpublished).

Ultimately, plaintiff's claims "must satisfy the elements of negligence." Geary, 2009 WL 1515505, *2; see also Chabot v. City of Sauk Rapids, 422 N.W.2d 708, 712-13 (Minn. 1988). They do not. Plaintiff has neither pleaded, nor offered evidence creating a triable question of fact, as to duty, breach, or causation. The statutory exception for negligent maintenance does not apply.

The dike is an improvement to real property, and the flooding arises from its defective and unsafe condition. State Farm, 718 N.W.2d at 886. Accordingly, the two-year limitations period of Minn. Stat. § 541.051 applies.

There are, in fact, two statutes of limitation – § 541.05 with a six year period, and § 541.051 with a two-year period – which arguably apply to this action. The Court must attempt to reconcile them and construe them, if possible, to give effect to both. Minn. Stat. § 645.26 (2008); Ford v. Emerson Elec. Co., 430 N.W.2d 198, 200 (Minn. Ct. App. 1988). The Court finds this impossible.

The two statutes cannot be reconciled. The two-year statute, Minn. Stat. § 541.051 subd. 1(a), bars actions "in contract, tort, or otherwise to recover damages for any injury . . . arising out of the defective and unsafe condition of an improvement to real property." (emphasis added). The "or otherwise" language is obviously designed to cover any other claims relating to any injury

allegedly caused by unsafe real property improvements. This contrasts with Minn. Stat. § 541.05 subd. 1(1), a six-year limitations period which serves as a catch-all for any "contract or other obligation . . . as to which no other limitation is expressly prescribed."

Where two statutes conflict and cannot be reconciled, Minnesota law provides that "the more particular provision controls over the general provision." Minn. Stat. § 645.26 subd. 1; Ford, 430 N.W.2d at 200. Here, the two-year statute of limitations, specifically directed as it is to improvements in real property, is clearly the more particular. Being more specific, and indeed being directed to the specific wrong alleged in plaintiff's Complaint, the two-year statute controls. Nuisance and trespass claims caused by an improvement to real property are governed by the two-year statute, not the six-year statute. See Nolan, 673 N.W.2d 496-97.

The Court next considers when plaintiff's claim accrued. This action was originally filed on October 14, 2008. If plaintiff's claims accrued before October 14, 2006, this action is time-barred.

The limitations period begins with the "discovery of the injury." Minn. Stat. § 541.051. The question to be asked is, "When was the problem perceived?" See Nelson, 716 N.W.2d at 402 (cause of action accrued when plaintiffs noticed foul odor emanating from sedimentation pond); Nolan, 673 N.W.2d at 497 (cause of action accrued when storm sewer flooding was discovered or

11

should have been discovered); Matter, 478 N.W.2d at 213 (cause of action accrued when ice dam in drainage swale caused flooding and erosion); Hendrickson v. City of Shoreview, 2003 WL 1962212, *3 (Minn. Ct. App. 2003) (trespass cause of action, subject to two-year statute, accrued when municipal holding pond overflowed and flooded plaintiffs' basement).

Here, the Court finds the Minch family's alleged injury occurred and was perceived the first time their property flooded. Plaintiff acknowledges, and the evidence before the Court reflects, flooding began in late 2000 and early 2001 -- more than seven years prior to the filing of this action. Unless there is a continuing trespass, or a basis to toll the statute, plaintiff's action is time-barred.

Plaintiff argues the flooding is a continuing trespass, which means each new incident of flooding triggers a new trespass action. To support this proposition, plaintiff argues that a trespass is continuing if it "may be abated or discontinued at any time." Hebert, 744 N.W.2d at 234. "If the future injury is preventable but the trespasser fails to take steps to avoid a recurrence," then "the invasion constitutes separate, recurring acts of trespass." Id.

The Court disagrees. Recognizing an exception for continuing trespass on these facts would eviscerate § 541.051 whenever an improvement to real property caused intermittent flooding. An

exception for continuing trespass appears nowhere in the statute's text, and to date, no Minnesota court has implied one. See Geary, 2009 WL 1515505, *3 (declining to imply exception for continuing trespass where other exceptions are explicit in statute's text). The Court agrees with Geary; where a trespass or nuisance is caused by a defective improvement to real property, the action must be brought within two years of discovery of the first occurrence of the injury. There is no continuing trespass here.

Lastly, plaintiff argues the statute should be tolled for the period during which the Minch family brought its concerns to the BRRWD. Plaintiff equates attendance at BRRWD public meetings with an effort to pursue administrative remedies. From this tortured analogy, plaintiff argues its administrative remedies were not exhausted until September 2007, with the BRRWD's letter saying it would take no further action respecting the Norby field dike.

The Court cannot agree. It is true that, when administrative remedies are available, parties may be required to exhaust them before seeking judicial review. See Amcon Corp. v. City of Eagan, 348 N.W.2d 66, 71 (Minn. 1984) (zoning). And, under appropriate circumstances, the statute of limitations may be tolled while a party pursues administrative remedies. See DeBerg v. RSM McGladrey, Inc., 2008 WL 4471222, *3 (Minn. Ct. App., Oct. 7, 2008) (unpublished) (holding timely filing of administrative charge before MHRA "effectively tolls" one-year limitations period).

Tolling, an equitable remedy, may be appropriate even if a statute does not explicitly provide for it. "Whenever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him" in calculating whether the action is barred by limitations. See St. Paul, M. & M. Ry. Co. v. Olson, 91 N.W. 294, 296 (Minn. 1902) (holding adverse possession statute was tolled while defendant pursued administrative land patent process).

Plaintiff's problem, however, is that while it may wish to call the BRRWD meetings administrative proceedings, wishing does not make it so. This is even more strongly emphasized where, as here, Minnesota has a "specialized administrative process" to address drainage issues. See Zaluckyj v. Rice Creek Watershed Dist., 639 N.W.2d 70, 75 (Minn. Ct. App. 2002); see also Minn. Stat. §§ 103E.202-351 (petitions for drainage projects and improvements to drainage system); §§ 103E.701-745 (repair of drainage system), § 103E.095 (appeal of administrative orders); §§ 103D.521-551 (water rights and use permits); §§ 103D.701-745 (petitions for watershed district projects). These specialized procedures, if invoked, must be exhausted before a lawsuit can be filed. See Zaluckyj, 639 N.W.2d at 77.

But no administrative process was invoked here. The BRRWD is not a party, and plaintiff does not ask the Court to review its decisions concerning the Norby field dike. Plaintiff never filed

14

a formal petition seeking BRRWD administrative proceedings at all. Instead, the record reflects A.R. Minch and Roger Minch simply attended public meetings, voiced their concerns, and gave the BRRWD information about the Norby field dike. The BRRWD eventually wrote the Minch family a letter declaring it would take no action. This is neither actually, nor the analogue of, an administrative process. Certainly a visit to a public meeting offers no reason why plaintiff would be justified in concluding that its legal claims must wait for the BRRWD to decline to take any action.

Taking every fact in the light most favorable to plaintiff, the Court finds no record basis upon which to toll the statute of limitations. Plaintiff has utterly failed to show this dispute is other than a private dispute between neighbors which could have been filed at any time after the first flooding occurred in 2000 or 2001. Instead, plaintiff waited to file it until 2008. As such, it is barred by Minnesota Statute § 541.051.

III. Conclusion

For the foregoing reasons, IT IS ORDERED that plaintiff's motion for summary judgment [Docket No. 53] is denied, and defendants' motion for summary judgment [Docket No. 59] is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  May 6, 2010

                                        s/ James M. Rosenbaum
                                        JAMES M. ROSENBAUM
                                        United States District Judge